IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Michael Slager, | ) | |
| | ) | 2:15-cv-04536-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (Breach of Contract, Bad Faith |
| Southern States Police Benevolent | ) | Unfair Insurance Practices) |
| Association, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff, complaining of the conduct of the Defendant herein, alleges as follows:

**Parties and Jurisdiction**

1.      The Plaintiff, Michael Slager ("Slager" of "Officer Slager") is a citizen and resident of the State of South Carolina.

2.      Upon information and belief, Defendant Southern States Police Benevolent Association, Inc. ("Southern States PBA") is a corporation organized and existing under the laws of the State of Florida which transacts business within the State of South Carolina. Among the Defendant's business activities in South Carolina, Defendant Southern States PBA issues policies of insurance which insure police officers within the State of South Carolina.

3.      Defendant Southern States PBA has sufficient minimum contacts to be subject to jurisdiction within the State of South Carolina under the South Carolina Long Arm Statute, Section 36-2-802 and 803 of the Code of Laws of South Carolina, 1976 as amended.

4.      This controversy involves citizens of different States and a subject matter which exceeds $75,000.00 in value, as a result of which jurisdiction is proper in this Court pursuant to 28 USC 1332.

1

5. Venue is proper in this Court as substantially all of the acts giving rise to this controversy occurred within this venue and the Defendant is subject to personal jurisdiction within this venue, all as provided for in 28 USC 1391.

**Factual Background**

6. Defendant Southern States PBA issues policies of insurance which they promote as "Legal Defense Benefit" plans.

7. Southern States PBA promotes its Legal Defense Benefit plan to uniformed officers to cover the expense associated with a legal defense in the event that a plan participant is involved in a lawsuit or is the subject of a criminal accusation that results from professional acts or omissions which arise out of and in the scope of their duties as law enforcement officers.

8. Officer Slager first purchased a Legal Defense Benefit plan from Defendant Southern States PBA on or about October 13, 2011.

9. Officer Slager paid $23.50 per month for his Legal Defense Benefit plan from October, 2011 through June, 2012 at which time he elected to discontinue his plan.

10. Slager reinstated his Legal Defense Benefit plan on or about January 31, 2013, and continued to pay his $23.50 premium every month thereafter through April, 2015.

11. Officer Slager's Southern States PBA Legal Defense Benefit Plan was known and identified as Policy No. 00-16, a copy of which is attached hereto as **Exhibit A**.

12. As it relates to the obligation of Southern States PBA to provide a legal defense to Officer Slager in the event of a lawsuit or criminal accusation, Policy No. 00-16 provides in pertinent part as follows:

    a. "The Legal Defense Benefit will be provided to Southern States PBA members only in those cases where a lawsuit or criminal accusation results from

professional acts or omissions which arise out of and in the scope of their duties as a law enforcement officer." **Section 1.A. Coverage and Eligibility**.

b. "The Benefit shall consist of the payment by Southern States PBA of attorney's fees and directly related Court costs." **Section 1.B. Coverage and Eligibility.**

c. "The term 'arising out of and in the scope of their duties' as used in this Policy encompasses actions or omissions or a member while in the performance of regularly assigned law enforcement duties for his/her employment agency. The benefit is not designated to cover a member while he/she is off-duty or engaged in off-duty employment." **Section 1.E. Coverage and Eligibility**.

d. "Coverage under the benefit is intended to apply to cases where a member has taken some type of direct law enforcement action consistent with his/her responsibilities as a law enforcement officer. It is not intended to apply to non-law enforcement actions, including, but not limited to, personnel, employment decisions (hiring, discipline or termination of employees), management decisions dealing with procedural operation or physical facilities of the law enforcement agency (validity of agency rules, procedural orders or a facilities capacity) or instances where no direct law enforcement action on the part of the member is alleged to have taken place (vicarious liability or liability based on a theory of respondent superior)." **Section 1.G. Coverage and Eligibility.**

e. "The Association CEO or the Director of Legal Services (DLS) will authorize all requests for legal services under the Benefit if it is determined that the following criteria are met:

      i. The requesting officer is a current member in good standing of Southern States, PBA,

      ii. He/she was a member of the Association at the time of the incident,

      iii. He/she remains a member in good standing from the date of incident until conclusion of the adversarial proceedings,

      iv. The incident was the result of the MEMBER's performance of or pursuit of his/her official duties as a law enforcement officer, and

      v. The request for coverage was submitted by the member and received by the Association within ten (10) calendar days after the member received official notification of the civil suit or criminal accusation and active representation of the member is undertaken by a legal defense benefit attorney.

      vi. The member contracts the assigned attorney within five (5) days of receiving notification from the association specifying the name and phone number of such attorney.

      vii. The member cooperates in the preparation and defense of the case by remaining available for contact upon reasonable notice from the association or assigned counsel." **Section 1.B. Benefit Administration.**

f. "Southern States PBA reserves the right to withhold approval of any benefits and to withdraw approval of any benefits if it is determined at any time that the member has committed an intentional, deliberate and/or illegal act, either civilly or criminally." **Section 1.D. Limitations, Restrictions and Exemptions.**

13. In further explanation of its benefits, Southern States PBA issued a wallet card to Officer Slager which summarized his benefits and provided an explanation with regard to reporting claims. A copy of the wallet card is attached hereto as **Exhibit B**.

14. The wallet card provides in pertinent part as follows:

- "ALL SOUTHERN STATES PBA ACTIVE MEMBERS RECEIVE THE FOLLOWING LEGAL DEFENSE BENEFITS WHILE ACTING WITHIN THE SCOPE OF THEIR LAW ENFORCEMENT DUTIES."

- "SHOOTING: **FOR ANY DUTY RELATED SHOOTING** OR ACTION WHICH RESULTS IN DEATH OR SERIOUS INJURY, AN ATTORNEY WILL BE SENT TO YOU. CALL EMERGENCY 800 NUMBER ON FRONT IMMEDIATELY!!!"

- "… ASSISTANCE IN CRIMINAL MATTERS EXCLUDE INTENTIONAL CRIMINAL ACTIVITY OR DRUG RELATED CRIMES." **Emphasis Added**.

15. On April 4, 2015, Officer Slager was acting within the course and scope of his employment with the City of North Charleston Police Department when he initiated a routine traffic stop on a motor vehicle being operated by Walter Scott ("Scott").

16. In the context of the motor vehicle stop, Scott fled on foot.

17. Officer Slager was acting within the course and scope of his duties as a law enforcement officer when he then pursued Scott on foot.

18. Officer Slager and Scott encountered one another in an open field not far from the location of the traffic stop. A tussle between the two men ensued.

19. Officer Slager was acting within the course and scope of his employment as a law enforcement officer as he wrestled with Scott.

20. As the two men wrestled, Scott gained possession of Slager's Taser and discharged it more than once.

21. Officer Slager pulled his service revolver and shot Scott.

22. Scott died as a result of the shooting.

23. Officer Slager was acting within the course and scope of his employment as a law enforcement officer when he shot Scott.

24. Officer Slager had stopped Scott in a City of North Charleston Police Vehicle.

25. Officer Slager was wearing a City of North Charleston Police uniform and badge throughout his encounter with Scott.

26. Office Slager shot Scott using his City of North Charleston police issue firm arm.

27. Officer Slager was performing his regularly assigned law enforcement duties for the City of North Charleston Police Department when he shot Scott.

28. Officer Slager was not off-duty when he shot Scott, nor was he engaged in off-duty activities.

29. Office Slager was not engaged in non-law enforcement actions, such as personnel, employment decisions (hiring, discipline or termination of employees), management decisions dealing with procedural operation or physical facilities of the law enforcement agency (validity of agency rules, procedural orders or a facilities capacity) or instances where no direct law enforcement action on the part of the member is alleged to have taken place (vicarious liability or liability based on a theory of respondent superior), at the time he shot Scott.

30. Officer Slager was not engaged in intentional criminal activity, such as "drug related crimes," when he shot Scott.

31. Officer Slager was a current member in good standing of Southern States, PBA, at the time he shot Scott.

32. Officer Slager was a member of the Police Benevolent Association at the time he shot Scott.

33. Officer Slager remained a member in good standing of the Police Benevolent Association from the date of incident until he was wrongfully denied benefits as described herein below.

34. Following the shooting incident with Scott, Officer Slager was charged with murder and arrested.

35. Officer Slager has pleaded not guilty. A trial date has not been set.

36. Officer Slager made a request for coverage under his Legal Defense Benefit plan within ten (10) calendar days after he received official notification of the criminal accusations against him.

37. After requesting benefits under the Legal Defense Benefit plan, Defendant Southern States PBA granted Officer Slager's request and assigned attorney David Aylor to represent Officer Slager in defense of the Scott murder charge.

38. On or about April 7, 2015, Attorney Aylor suddenly and summarily terminated his representation of Officer Slager.

39. Following Attorney Aylor's sudden departure from representation, Officer Slager requested that Southern States PBA reassign another attorney to represent him under the Legal Defense Benefit plan.

40. On April 8, 2015, just four days after the Scott incident and just four days after having provided benefits under the Legal Defense Benefit plan, Defendant Southern States PBA denied Officer Slager's request for reassignment.

41. In a letter dated April 8, 2015, Southern States PBA explained that "upon review your [the] case," it would not provide benefits under the intentional acts exclusion as it had determined that Officer Slager had "committed an intentional, deliberate and/or illegal act, either civilly or criminally."

42. At all times relevant hereto, Defendant Southern States PBA owed duties to Officer Slager, including the duty to act in good faith and the duty to interpret its policy in favor of coverage.

43. Upon information and belief, Defendant Southern States PBA conducted no investigation whatsoever between April 7, 2015 and April 8, 2015 upon which it could have concluded that Officer Slager was not entitled to coverage for a legal defense under his Legal Defense Benefit plan.

44. Alternatively, any "investigation" that Southern States PBA conducted was cursory at best and conducted in bad faith for the purpose of denying coverage.

45. Southern States PBA did not interview Officer Slager before making its decision to terminate his benefits, nor did it request an interview.

46. Whether Officer Slager acted criminally is the subject matter of the pending criminal charges against him.

47. Rather than continue to provide coverage benefits as it decided did between April 4 and April 7, 2015, on April 8, 2015 Defendant Southern States PBA acted in bad faith in summarily terminating benefits to its insured.

48. The expense associated with Slager's defense of the criminal charges is substantial.

49. Without the benefits to which he is entitled under the Legal Defense Benefit plan, Slager and his family will be financially devastated.

## For a First Cause of Action

## Breach of Contract

50. The paragraphs listed above are incorporated herein as if realleged and restated in full verbatim.

51. At all times relevant hereto, Officer Slager had a contract with Defendant Southern States PBA which is known and identified as Legal Defense Benefit plan, Policy No. 00-16.

52. Pursuant to the contract of insurance between the parties, Defendant Southern States PBA promised to pay for the expense associated with a legal defense for Officer Slager in the event that criminal accusations were brought against him as a result of an act or omission arising out of his duties as a law enforcement officer.

53. On April 4, 2015, Officer Slager shot Scott following a routine traffic stop. At all times on April 4, 2015, Officer Slager was acting within the course and scope of his duties as a City of North Charleston Police officer.

54. As a result of the incident with Scott, Officer Slager was charged with murder and arrested. He awaits trial at this time.

55. On April 4, 2015, Officer Slager experienced a covered event under this Legal Defense Benefits plan with Defendant Southern States PBA.

56. Southern States PBA first honored its contract with Officer Slager by providing a legal defense.

57. On April 8, 2015, Defendant Southern States PBA breached its contract of insurance with Officer Slager by denying him the benefits which he was promised under his plan of insurance.

58. As a direct and proximate result of Defendant Southern State PBA's breach of contract, Officer Slager has been forced to provide a legal defense to the charges which have been brought against him at his own expense.

59. The Plaintiff is entitled to and prays for judgment against Defendant Southern States PBA in an amount determined to be sufficient to compensate him fully for all losses occasioned herein.

## For a Second Cause of Action

### Bad Faith

60. The paragraphs listed above are incorporated herein as if realleged and restated in full verbatim.

61. At all times relevant hereto, Officer Slager had a contract with Defendant Southern States PBA which is known and identified as Legal Defense Benefit plan, Policy No. 00-16.

62. Pursuant to the contract of insurance between the parties, Defendant Southern States PBA promised to pay for the expense associated with a legal defense for Officer Slager in the event that criminal accusations were brought against him as a result of an act or omission arising out of his duties as a law enforcement officer.

63. On April 4, 2015, Officer Slager shot Scott following a routine traffic stop. At all times on April 4, 2015, Officer Slager was acting within the course and scope of his duties as a City of North Charleston Police officer.

64. As a result of the incident with Walter Scott, Officer Slager was charged with murder and arrested. He awaits trial at this time.

65. On April 4, 2015, Officer Slager experienced a covered event under this Legal Defense Benefits plan with Defendant Southern States PBA.

66. At all times relevant hereto, Defendant Southern States PBA owed duties to Officer Slager as its insured.

67. Among the duties that Defendant Southern States PBA owed to Officer Slager was the duty to act in good faith and the duty to construe its policy of insurance in favor of coverage.

68. On April 4, 2015, Defendant Southern States PBA acted in good faith and extended benefits to Officer Slager pursuant to its contract of insurance.

69. On April 8, 2015, Defendant Southern States PBA breached its duty of good faith to Officer Slager by summarily terminating the benefits to which he was entitled under his policy of insurance.

70. In defense of its decision, Defendant Southern States PBA explained to Officer Slager that its decision was based upon its "review" of the case.

71. At the time of Defendant Southern States PBA's review, the case was four days old.

72. At the time of Defendant Southern States PBA's review, Office Slager had been charged with murder, a charge which he denies.

11

73. In conducting its "review," Defendant Southern States PBA did not interview its own insured, nor did it ask to interview its own insured.

74. Defendant Southern States PBA was asked by Officer Slager's subsequent legal counsel, Andy Savage, to reconsider its denial. It has refused.

75. Rather than construe its policy to afford coverage for a clear officer related shooting, Defendant Southern States PBA construed its policy narrowly to avoid coverage. In doing so, Defendant Southern States PBA would have had every expectation that Officer Slager would be forced to provide a legal defense for himself and that he would have lacked the resources to mount a proper defense.

76. As a direct and proximate result of Defendant Southern State PBA's bad faith, Officer Slager has been forced to provide a legal defense to the charges which have been brought against him at his own expense.

77. The Plaintiff is entitled to and prays for judgment against Defendant Southern States PBA in an amount determined to be sufficient to compensate him fully for all losses occasioned herein, as well as punitive damages, in an amount deemed sufficient to impress upon the Defendant the seriousness of its conduct and to deter such similar conduct in the future.

**For a Third Cause of Action**

**Unfair Insurance Practices**

**38-59-20, South Carolina Code of Laws**

78. The paragraphs listed above are incorporated herein as if realleged and restated in full verbatim.

79. Defendant Southern States PBA sold Officer Slager a Legal Defense Benefit plan, Policy No. 00-16, which was purportedly protection against one potential liability:  it was to

provide him a legal defense in the event that he was sued or accused of a criminal act because of an event that occurred within the course and scope of his employment as a police officer.

80. In selling its policy of insurance, Defendant Southern States PBA issued a wallet card to Officer Slager confirming that its policy of insurance would protect him in the event of "ANY DUTY RELATED SHOOTING" and assuring that in such an event "AN ATTONREY WILL BE SENT TO YOU."

81. Defendant Southern States PBA did not explain that the attorney would be sent to him for three days or that instead of providing a legal defense to charges stemming from an officer related shooting, Southern States PBA may unilaterally decide that the shooting was intentional and use such a determination as a basis to deny coverage.

82. If Legal Defense Benefit plan, Policy No. 00-16 does not provide legal defense coverage for the charges brought against Officer Slager following the Walter Scott shooting, then the contract is illusory and actually provides no coverage whatsoever.

83. In the placement and administration of its contract of insurance, Defendant Southern States PBA engaged in improper claims practices, including but not limited to:

   a. Knowingly misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages;

   b. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;

   c. Not attempting in good faith to effect prompt, fair, and equitable settlement of claims submitted to it in which liability has become reasonably clear; and

   d. In otherwise acting unreasonably in failing to pay or settle claims arising under coverages provided by its policies.

84. As a direct and proximate result of Defendant Southern State PBA's bad faith, Officer Slager has been forced to provide a legal defense to the charges which have been brought against him at his own expense.

85. The Plaintiff is entitled to and prays for judgment against Defendant Southern States PBA in an amount determined to be sufficient to compensate him fully for all losses occasioned herein, as well as punitive damages, in an amount deemed sufficient to impress upon the Defendant the seriousness of its conduct and to deter such similar conduct in the future and attorney's fees in an amount equal to one-third of all sums awarded.

WHEREFORE, the Plaintiff prays for judgment against the Defendant for an amount determined to be sufficient to compensate him fully for all losses occasioned herein, as well as punitive damages, in an amount deemed sufficient to impress upon the Defendant the seriousness of its conduct and to deter such similar conduct in the future, and attorney's fees equal to one-third of the total amount awarded, together with such additional relief as the court deems just and proper.

Charleston, South Carolina
November 10, 2015

**BLAND RICHTER, LLP**
*Attorneys for Plaintiff*

s/Ronald L. Richter, Jr.
Ronald L. Richter, Jr. (Federal Bar No. 66377)
s/Scott M. Mongillo
Scott M. Mongillo (Federal Bar No. 7436)
Peoples Building
18 Broad Street, Mezzanine
Charleston, South Carolina 29401
843.573.9900 (telephone)
843.573.0200 (facsimile)
ronnie@blandrichter.com (e-mail)

<u>s/Eric S. Bland</u>
Eric S. Bland (Federal Bar No. 64132)
1500 Calhoun Street
Post Office Box 72
Columbia, South Carolina 29202
803.256.9664 (telephone)
803.256.3056 (facsimile)
ericbland@blandrichter.com (e-mail)

15